UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

NAPLES SCREEN REPAIR, LLC,
a Florida limited liability company,
and JAMES L. CUNNINGHAM, an
individual,

       Plaintiffs,

v.                                                  Case No: 2:20-cv-844-FtM-SPC-NPM

ARROW HANDYMAN "LLC", a
Florida limited liability
company, and NAPLES
SCREEN, LLC, a Florida limited
liability company,

       Defendants.
_____/

# OPINION AND ORDER[1]

Before the Court is Defendants Arrow Handyman "LLC" and Naples Screen, LLC's Motion to Dismiss (Doc. 10) and Plaintiffs Naples Screen Repair, LLC and James Cunningham's response (Doc. 13), as well as Defendants' Request for Judicial Notice (Doc. 11) and Plaintiffs' opposition (Doc. 14). The Court denies the Motion and Request.

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them. The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

## BACKGROUND[2]

Plaintiff Naples Screen Repair, LLC, ("NSR") installs, repairs, and replaces protective and privacy screens used in pool enclosures, lanais, porches, patios, building entryways, doors, and windows. NSR has used the "NAPLES SCREEN REPAIR" mark since 1978. Plaintiff James Cunningham is NSR's principal and has owned the domain name "naplesscreenrepair.com" for NSR to use as its website since 2010. NSR's mark was registered with the State of Florida on April 30, 2019, and federally on October 29, 2019.

Defendant Arrow Handyman "LLC" formed in April 2012 and Defendant Naples Screen ("NS") was formed on August 19, 2019. Arrow and NS are owned and operated by three related individuals. Since 2013, Arrow has registered websites under the names: "naplesscreens.com"; "naples-screen-repair.com"; "naplesscreen-repair.com"; "naples-screenrepair.com"; "naplesscreenrepair.net"; "naplesscreenrepairs.com"; "screenrepairinnaples.com"; and "screenrepairnaples.org." NSR discovered these websites and demanded that Arrow cease use of the mark and confusingly similar derivations thereof. NSR and Cunningham now sue Arrow and NS for: (1) trademark infringement in violation of 15 U.S.C. § 1114;

---

[2] These are the allegations in the Complaint accepted as true and construed, along with any reasonable inferences, in a light most favorable to Plaintiffs. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015).

(2) violation of the Lanham Act, 15 U.S.C. § 1125(a); (3) federal cybersquatting; (4) trademark infringement in violation of Florida law; and (5) common law trademark infringement and unfair competition.

NSR previously brought suit against Arrow and its president and managers, alleging seven counts related to infringement of the "Naples Screen Repair" mark. *Naples Screen Repair, LLC, v. Arrow Handyman "LLC"*, Case 2:20-cv-47-FtM-SPC-NPM, 2020 WL 2512877, at *1 (M.D. Fla. May 15, 2020). This Court dismissed that complaint without prejudice as a shotgun pleading. *Id.* Naples Screen Repair did not file an amended complaint, so the Court entered judgment and closed the matter.

Now before the Court is Arrow and NS's motion to dismiss. Arrow and NS argue that all NSR and Cunningham's claims require a valid and legitimate mark to survive and the Complaint is deficient in pleading existence of such a mark.

## LEGAL STANDARD

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, which, if accepted as true, would 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the court can draw a reasonable inference, based on the facts pled, that the opposing party is liable for the

3

alleged misconduct. *Iqbal*, 556 U.S. at 678. The court must accept all factual allegations as true and view them in a light most favorable to the non-moving party. *Id.* The court limits its review "to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).

## DISCUSSION

A trademark infringement claim requires NSR and Cunningham to

> establish: (1) that they possess a valid mark, (2) that the defendants used the mark, (3) that the defendants' use of the mark occurred "in commerce," (4) that the defendants used the mark "in connection with the sale . . . or advertising of any goods," and (5) that the defendants used the mark in a manner likely to confuse consumers.

*N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1218 (11th Cir. 2008); *see FN Herstal SA v. Clyde Armory Inc.*, 838 F.3d 1071, 1080 (11th Cir. 2016) (similar elements for a Section 43(a) Lanham Act claim); *see also Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 n.4 (11th Cir. 2001) ("Courts may use an analysis of federal infringement claims as a 'measuring stick' in evaluating the merits of state law claims of unfair competition."). "Actual substantive rights to a trademark arise based on its use in commerce and its distinctiveness. Trademark or service mark protection 'is only available to distinctive marks, that is, marks that serve the purpose of identifying the source of the goods or services.'" *Knights Armament Co. v.*

*Optical Sys. Tech., Inc.*, 654 F.3d 1179, 1188 (11th Cir. 2011) (quoting *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1357 (11th Cir. 2007)).

There exist four categories of distinctiveness, in descending order of strength: "(1) fanciful or arbitrary; (2) suggestive; (3) descriptive; and (4) generic." *Id.* "An 'arbitrary or fanciful' mark bears no logical relationship to the product it represents." *Id.* "A suggestive mark refers to some characteristic of the goods, but requires a leap of the imagination to get from the mark to the product." *Welding Servs., Inc.*, 509 F.3d at 1357-58. Fanciful, arbitrary, and suggestive marks are considered inherently distinctive. *Royal Palm Props., LLC v. Pink Palm Props., LLC*, 950 F.3d 776, 783 (11th Cir. 2020). A "descriptive" mark identifies a characteristic or quality of the product. *Knights Armament Co.*, 654 F.3d at 1188. It is not inherently distinctive and receives protection only if the mark acquires secondary meaning. *Id.* And a "generic" mark describes the class to which a good belongs and is afforded no trademark protection. *Id.*

Arrow and NS's entire motion rests on the contention that the "Naples Screen Repair" mark is not inherently distinctive. But the mark is registered, establishing a rebuttable presumption that it is protectable and distinctive. *Welding Servs., Inc.*, 509 F.3d at 1357 n.3 (citing 15 U.S.C. § 1057(b)). Thus, "in order to successfully challenge a registered mark on distinctiveness grounds, the challenger must overcome the presumption of validity by

5

showing—by a preponderance of the evidence—that the mark is not distinctive." Royal Palm Props., LLC, 950 F.3d at 783. If the challenger rebuts this presumption, the burden shifts back to the mark's owner to prove the opposite. Id. at 784. A motion to dismiss is not the proper vehicle to engage in a fact-specific analysis; the Court has been tasked with testing the sufficiency of the pleading, not the sufficiency of facts the parties have not yet been able to develop through discovery. Cf. Zeltiq Aesthetics, Inc. v. Pobra Enters., LLC, 2017 WL 238138, at *3 (M.D. Fla. Jan. 19, 2017) (declining to engage in a fact-intensive analysis in trademark infringement case on motion to dismiss where the claims were plausible).

Bolstering the conclusion that Arrow and NS ask this Court to prematurely wade into fact-based analyses is their request for the Court to take judicial notice of almost fifty facts that fall well outside the typical ambit of Rule 201. (Doc. 11). A fact may be judicially noticed if it is "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201(b). A court may take judicial notice on its own or if a party requests it provided that the court is "supplied with the necessary information." Fed. R. Evid. 201(c). Courts ordinarily take judicial notice of things like "(1) scientific facts: for instance, when does the sun rise or set; (2) matters of

geography: for instance, what are the boundaries of a state; or (3) matters of political history: for instance, who was president in 1958." *Shahar v. Bowers, 120 F.3d 211, 214 (11th Cir. 1997)* (en banc).

Many of the facts Arrow and NS seek to introduce fall well outside these established categories. For example, Arrow and NS ask the Court to judicially notice Google and Yelp search results for various terms. The reality that search results can vary based on an internet browser's stored cookies, location data, paid advertising, and user information make them generally unsuitable for judicial notice. *See, e.g., Reed v. CRST Van Expedited, Inc., 2017 WL 5633153, at \*3 (M.D. Fla. Nov. 20, 2017)* (refusing to take judicial notice of internet searches in a Rule 12(b)(6) motion to dismiss). Arrow and NS then ask for the Court to judicially notice the "fact" that various companies found in those search results do not "have any relationship with or to, or affiliation with or to" the parties in this lawsuit. Such facts are antithetical to those that can be appropriately judicially noticed. Indeed, Arrow and NS themselves decry the dangers of lawsuits between small businesses operating in small markets. (Doc. 10 at 10-12). The self-described nature of this market makes it highly likely that these various companies do in fact have some manner of relationship with each other, contrary to Arrow and NS's claim otherwise. Accordingly, Defendant's request for judicial notice is denied.

Arrow and NS rely extensively on *Nationwide Van Lines, Inc. v. Transworld Movers, Inc.*, No. 18-cv-62833-COOKE/HUNT, 2020 WL 4873713 (S.D. Fla. July 27, 2020), to support their motion. In *Nationwide Van Lines*, the court found that the plaintiff failed to plead, in its second amended complaint, that it had prior rights to its mark or name. *Id.* at *2. In doing so, the court stated:

> Although Plaintiff asserts that it has operated under the name NATIONWIDE since 2001, another company by the name of "National Van Lines" holds a current trademark registered in 1952, which is still current and more closely resembles Plaintiff's Mark than Nationwide Movers. Although Plaintiff's business was established in 2001, Plaintiff has not alleged that it was the first to use the term "Nationwide Movers." Indeed, Plaintiff obtained its Mark in 2018, whereas Defendants having been operating the website in question since 2003. Thus, it cannot be the case that Plaintiff ever had first use or priority of the mark.

*Id.* at *2. The court next found that plaintiff "fail[ed] to show the mark is inherently distinctive so as to avoid the likelihood of confusion." *Id.* "Plaintiff merely allege[d] that the mark is distinctive and has acquired secondary meaning and notes that the Certificate of Registration is prime facie evidence of a distinctive mark." *Id.* The plaintiff "assert[ed] no other allegations that would lead this Court to hold that the mark is indeed distinctive." *Id.* The court also found that plaintiff's "assertions that the mark is distinctive and acquired a secondary meaning are conclusory." *Id.* at *3. Finally, because

plaintiff failed to sufficiently allege facts to establish a distinctive mark, among other pleading deficiencies, its federal cybersquatting claim failed. *Id.*

Unlike the plaintiff in *Nationwide Van Lines*, NSR and Cunningham sufficiently allege a distinctive mark. As discussed above, the mark has been registered, providing a rebuttable presumption that it is distinctive, and there are no preexisting challengers to the mark. Beyond that, the Complaint alleges continuous and uninterrupted use of the mark since 1978, associated with the same business, same business license, and same telephone number. The mark is used in a uniform nature in and on NSR's online advertising, business cards, and service vehicles. NSR alleges it has achieved "favorable public acceptance and recognition" through its high-quality services and goodwill. NSR and Cunningham further allege that Arrow and NS capitalized on the mark and, necessarily, its associated goodwill, by pilfering a customer who specifically sought NSR's services. NSR and Cunningham have adequately pled trademark infringement.

Arrow and NS's sole remaining argument is that NSR and Cunningham's federal cybersquatting claim must fail because their allegation of bad faith intent is conclusory. Arrow and NS's argument lacks merit. To prevail on their cybersquatting claim, NSR and Cunningham must show (1) the mark is distinctive or famous and entitled to protection; (2) the defendants' domain name is identical or confusingly similar to the plaintiffs'

9

mark; and (3) the defendants registered or used the domain name with a bad faith intent to profit. *Bavaro Palace, S.A., v. Vacation Tours, Inc.*, 203 F. App'x 252, 256 (11th Cir. 2006). As alleged: "Defendant ARROW advised a customer of Plaintiffs that NSR had changed its name to ARROW when the customer engaged ARROW's services thinking she was still working with Plaintiffs and asked why her payment should be payable to ARROW." (Doc. 1 at 11). This, in conjunction with the slate of websites using combinations of the words "Naples," "screen," and "repair"—most glaringly using "naplesscreenrepair.*net*" compared to NSR's "naplesscreenrepair.*com*"—is sufficient allegation of a bad faith intent to profit.

Accordingly, it is now

**ORDERED:**

1. Defendants Arrow Handyman "LLC" and Naples Screen, LLC's Motion to Dismiss (Doc. 10) is **DENIED**.

2. Defendants' Request for Judicial Notice (Doc. 11) is **DENIED**.

**DONE** and **ORDERED** in Fort Myers, Florida on January 8, 2021.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record

10